The next case for oral argument this morning is United States v. Beasley, appeal number 23-2489. Good morning. Good catch. Thank you. Good morning, your honors. May it please the court. My name is Colleen Ramay, and I am here on behalf of defendant appellant Alvin Beasley. A lot has been made in the briefing on several subjects, but I would like to begin today addressing the government's harmless error argument. While we stand by our argument on structural error based on the charging documents in this case, I wanted to draw the court's attention to United States v. Maez. In Maez, which has been cited by both parties, the court did kind of a deep dive into the universe of considerations when we are on plain error review v. harmless error review. Maez says the Supreme Court has made it clear that harmless error analysis looks only to the trial record to measure the effect of a trial error. It went on to say an effect on the verdict can, of course, be measured only against what the jury saw, hence the restricted record for the substantial rights analysis. It is only on plain error under the fourth prong that the court is allowed to consider information in a PSR or other information that may have been introduced at sentencing. So under either the structural error argument or harmless error argument, the answer here is clear. There is no evidence at trial of the timing of Mr. Beasley's prior occasion or, sorry, prior offenses to meet the occasions prong of the inquiry under harmless error trial. But has that limitation been placed in sentencing cases, in apprendee-type cases or cases where the focus is on sentencing? When we are under de novo review, yes. So here we're on de novo review. Mr. Beasley went to trial, preserved all of his rights, made the objection at the appropriate time. So we look at cases like Cotton, and Cotton was plain error. When we get to the courts have talked about plain error and discussed a difference. Now, I understand that this ultimately goes to sentencing, but it is still an element of an aggravated offense. And so, yes, it is a sentencing factor, but it is not simply a sentencing factor as it changes the sentencing range. But if it's sentencing, why would the court's analysis be limited to just what was presented at trial? Because that's the only thing that we have to go on when we are doing a harmless error analysis for a preserved claim, for a trial. It was the government's burden, we now know, to properly charge Mr. Beasley with the offense. It wanted to convict him of and sentence him to. And it did not do that, and it did not present the required evidence at sentencing. Now, some of the Elaine and Apprendi cases where we were talking about the quantity of drugs making a difference to, you know, no one charged the jury with determining a quantity of drugs, but it made a difference for sentencing. Inevitably, that information was before the jury. So when the courts looked back at it to do a harmless error analysis, they looked at what was presented at trial. So there was, inevitably, there was information at trial presented to the jury that talked about, well, we weighed the drugs that were confiscated, and we did an analysis, and here's how much there was. I'm not sure that's always the case. When I went back and reviewed when it wasn't the case, we were on plain error. Justice Sotomayor, so when Maez was talking about the Rahafe element, you know, the new element in Rahafe, and in Greer, Justice Sotomayor really, she concurred in Greer, and she really underscored the difference between plain error and harmless error in a trial case. And she said, you know, she reminded courts that in a case like ours, where a defendant contemporaneously objects and is wrongfully overruled, appellate courts generally review for harmless error. In that case, when that happens, the defendants have not forfeited any of their rights, including their right to have a jury decide whether there is reasonable doubt as to any element of the crime charged. Now, the government's argument is that they properly, you know, they charged this offense. Our argument is that they didn't. But even if we assume that they did, appellate courts cannot find errors harmless simply because they believe that inculpatory evidence the government never put before the jury, like Greer's pre-sentence investigation report, is sufficient to find the defendant guilty. That's on page 517 to 518 of Greer. Is that the concurrence? That is the concurrence. And Greer was plain error. It was not objected to. And so in concurring, she was underscoring the difference between when we're on plain error and when we're on harmless error review. Respectfully, I don't think it matters that it's sentencing versus an inherent element of the offense. We are talking about an aggravated offense. This is an aggravated version of being a felon in possession that Mr. Beasley was sentenced for. And no information about this element was presented to the jury. So even under harmless error review, the court must reverse. I'd be happy to talk more about other things, but I realize I'm getting very close to my rebuttal time. All right. Thank you. Thank you.  Good morning. Good morning, and may it please the court. Jeff Kinster on behalf of the United States. It's undisputed in this case because the defendant conceded that the defendant committed an armed robbery in March 2004, that he committed an aggravated battery over a year later in June 2005, and that he then committed a murder over six years after that in December 2011. No rational fact finder could reasonably doubt whether those offenses were committed on different occasions. Can I ask you about that? Because it picks up on where Ms. Ramay was. Where he conceded it in the case we have before us was at sentencing. That's correct. So if we are supposed to imagine what a reasonable jury would have done, let's assume we agree with you that we need to conduct harmless error. How do we imagine that based on the concession when the concession only happened at sentencing? So the circuits have said a lot about this, actually, and they're unanimous in their viewpoint. And what they say is that the harmless error review looks to all relevant and reliable information in the entire record, and that's evaluated on a case-by-case basis for reliability without excluding any categories of evidence, and it's not limited to the trial record. The circuits have uniformly said that, including in cases in this precise posture where the defendants went to trial, the issue wasn't addressed at trial, but then the defendant then objected at sentencing. Have we specifically said that? I'm sorry to interrupt. Have we specifically said that? This court has applied that principle without explaining it. It applied that in Gammes. It also in Rodriguez, I think, and I think I have that case name right, a non-precedential decision where it actually found an error to be harmless based on the entire record. And, in fact, I take defense counsel's points about what Mays said, which in Mays the court was evaluating a Rafe error. But, in fact, Mays has been directly abrogated by the Supreme Court in Greer, which addressed that very same question and used the same language that the courts of appeals have been using in analyzing Erlinger errors, specifically that the record includes all relevant and reliable information in the entire record, evaluated on a case-by-case basis without excluding any categories of evidence. And so then, to be sure, Greer itself arose in the context of plain error review instead of harmless error. But that brings us back to Mays then, which recognized a longstanding principle, a well-settled principle in this court's case law, that the scope of the record is identical as between harmless error and plain error. Mays addressed that, this court, earlier in Mansouri, made that express point that the record is the same as between the two. And Greer definitively established that the record for the substantial rights inquiry, in fact, looks to all relevant and reliable information in the entire record. And so when you combine that with this court's settled precedent that the scope of the record is the same as between the two inquiries, that necessarily leads to the result that the same record applies here. That's the uniform view of the circuits that have addressed this, and it's also consistent with practice and principle. In cases like this, as Greer recognized, an alternative view would essentially posit an unrealistic scenario where this is actually presented to the jury, the jury is instructed, asked to decide this, but that the government doesn't actually attempt to discharge that burden. And that concern is even more pronounced here, because not only, like in Greer, did the defendant stipulate to his prior felony conviction, which prevented the government from addressing this at trial, and on top of that, he testified, he called another witness, and for both of those contexts, he expressedly and affirmatively opposed any reference to the nature of his prior conviction. So it's the defendant's own doing that this didn't come up at trial. And then at sentencing, he admitted the facts, which essentially relieves the government of any further burden. That sort of stipulation is equally conclusive at trial as it was in the sentencing proceeding. And that point that Greer was making is even more pronounced here, because this isn't a situation like in Rehaith, where in the district court, nobody realized that, in fact, that knowledge element needed to be addressed. And so the defendant there had actually no incentive to develop the record, at least for the sake of that finding. Here, everybody knew all along that this finding had to be made. The defendant would only be sentenced under the Arncourt Criminal Act if, in fact, the court found that he had his three prior felonies that were committed on occasions different from one another. So the defendant then had every opportunity and every incentive in connection with the sentencing phase, where everyone knew it was going to be decided, to contest this issue. He had an opportunity to argue to the district court about if he didn't believe the information before it was reliable, or if he didn't believe that that information satisfied the finding, or he could have introduced additional evidence if he thought there were any that bore on this question. Instead, he took the exact opposite approach, and he openly conceded to the court that the felonies were, in fact, committed over a year apart. And these weren't sort of on-the-spots or off-the-cuff statements by defense counsel, as I think the reply brief tries to characterize them. This was the defendant's own sentencing memorandum. Is it your position that you would want us to decide based only on the concession, or are you asking us also to look at the district court's reliance on the PSR? I think precedent shows that that's all fair game. The court looks at the entire record. And so as the courts of appeals have recognized in applying this standard and looking at the record, that includes statements in the pre-sentence report that haven't been objected to. That includes other evidence in the record. And that includes, of course, the defendant's admissions, all of which are present here. The pre-sentence report reflects the dates of the offenses. The defendant not only did not object to them, he expressly explained in his sentencing memo that those were correct. And that's on page 8 of Document 366, where the defendant wrote that the armed robbery, quote, occurred. I'm just wondering, what do we have here besides the PSR and the concession? Just those two things? You seem to have mentioned a third sandwiched in between there. The judicial records. From the underlying convictions. Correct. That were introduced at trial. No, in connection with the sentence case. The defendant stipulated at trial, so the records were not introduced at trial itself. So as courts have recognized, the harmless error review can be conducted based on the basis of the entire record. And courts look at the records on a case-by-case basis for reliability. Here, the defendant had every incentive to contest the information if he thought it was inaccurate. But he conceded that the armed robbery was, in fact, committed on March 21, 2004. That the aggregated battery occurred over a year after that. The reason I was asking is because I am wondering, after Erlinger, whether on harmless error review, we can rely at all on the judge having looked at the PSR and Beasley not objecting to the PSR. Because as you know, Erlinger spills a lot of ink about no judge should look at shepherd documents to make this PSR determination. And here we have the PSR is what the government is pointing to, among other things. And we have another case, Richardson, for example, saying, well, if a defendant doesn't object to the PSR, and the PSR has this information, we're going to just assume the PSR relied on these shepherd documents. Do you see the tension I'm pointing to there? And so I'm wondering if you even need us to go down that road for your position. So for our position, the defendant's concessions are sufficient. As to Erlinger's point about shepherd documents, I don't read the language there as strongly as Your Honor characterized it. I think the court certainly pointed out potential deficiencies with shepherd documents. This is an argument that's been frequently made by defendants who are raising Erlinger claims. And the courts of appeals have uniformly recognized that, yes, as Erlinger explained, caution is appropriate when looking at shepherd documents. And so that's why courts have also looked at things like, did the defendant admit it? Is there other evidence on the record on that score? But I think this case really presents the clearest possible example because it's not just a case where the pre-sentence report cited documents or where the judicial records are there. We have the defendant expressly agreeing both in a sentencing memo and then again at the sentencing hearing itself to the relevant dates. It seems like some of those cases, too, in saying caution with the shepherd documents, were discussing more the error in the first place as opposed to the harmlessness of it. I think that's correct because courts have uniformly been willing to at least look at the shepherd documents, consider on a case-by-case basis, as the Supreme Court precedent requires, whether those are suitably reliable to address the particular finding that the court needs to make. And this case, I think, given the defendant's agreement, makes that a clear case. Just briefly on the application of the standard, the defendant in his reply brief hypothesizes some potential factual connection between the offenses. And that's just immaterial, even if we were to assume hypothetically that were accurate, because that wouldn't change if the statute is specifically focused on were the offenses committed on occasions different from one another. So even if clearly, hypothetically, there were some factual connection between these two different offenses, they were not committed on the same occasion when they were committed on two entirely different dates and different years. Can I ask a clarifying question about how you started? Are you saying we don't even need to decide the structural error versus harmless error question because, as I believe you're arguing now, the analysis isn't the same at the end of the day? This court does need to decide structural versus harmless because if it were structural, then we don't even go down this discussion that we've had during oral arguments. And of course, I'm happy to answer Your Honor's questions on the structural versus harmless. Our view is that that's well settled in this court's precedent. Unless Your Honors have any further questions, we'd ask this court to affirm. Thank you. Thank you. Thank you, Your Honors. I am looking at the page of the PSR that contains these two prior convictions. The PSR discusses the information on each of them. It wasn't even brought before a grand jury. We cannot – what the government's argument amounts to is no harm, no foul. There was an error at trial. We can clean it all up at sentencing and sentence you to a sentence that would not be permissible based on what it charged you with, all based on information that they could not present at trial. It sort of boggles the mind because if this had been done the way Erlinger tells us it should have been done, we would be looking at a situation where the government would have to bring in competent evidence that Mr. Beasley could have objected to to prove the occasions on which these happened. So whether or not they did happen on, you know, March 21st of 2004 and June 11th of 2005, the government would still have to bring in evidence that would be tested by the adversarial process and have to prove that at trial. Mr. Beasley never gave up this right to have all elements of the offense charged against him proven to a jury. If we could look beyond what was presented before the jury, do you agree that his concession in the sentencing memo is sufficient for harmless error? No, Your Honor. How do you get around the fact that he agreed in his sentencing memo that these offenses were committed more than a year apart? Because he still stood on his rights, A, to have the government prove that with admissible evidence, and he also, I mean, as I presented in the reply brief, there would be an argument he could have made to the jury. I think it is entirely plausible, based on when these things were charged and how the sentencings happened, that they were connected. And now I understand that 15 months or so is a long time between events, but because we are no longer looking at a specific amount of time, he could have made an argument to a jury. We do not know what kind of evidence would have come out. So do we take into account the state of Illinois law and the fact that there is Illinois law that related offenses should be charged together, or that sentences are run concurrently if they're imposed at the same time, even if they're not related cases? I mean, do we take all that into account when evaluating the argument that you're making about what he could have presented to a jury? Your Honor, you might. I mean, I would go back to my previous arguments, but the sentences did run concurrently. They were charged in different indictments, but they were run concurrently. And ultimately, I don't know that a jury—like, this is a fact question. The occasions issue is a fact question. So a jury would have to make the finding. We wouldn't know what a jury might hang on to. And honestly, what evidence would be presented at all of when he made these? Because they can't come in with an information that alleged that to prove—it's hearsay upon hearsay, right? We're dealing with all sorts of evidentiary problems with just walking into court with the information charging these things. So we would have to even get to the point of making arguments in front of a jury. This cannot be harmless where it radically changed the sentencing that Mr. Beasley was subject to. Thank you. Did that answer your question, Your Honor? I'm sorry. Thanks to both counsel. The court will take the case under advisement.